## No. 10,181.

STATE OF LOUISIANA vs. LIVERPOOL, LONDON AND GLOBE INSURANCE COMPANY.

The very object of Art. 206 of the Constitution was to remove license taxation from the operation of Art. 203 requiring all taxation to be equal and uniform, and to authorize require license-taxation to be graduated.

The term "graduate" is a word of elastic meaning involving infinite variety in the methods and standard of graduation which may be adopted.

The Constitution simply requiring the General Assembly to *graduate* license taxes without indicating any particular method or standard of graduation, has devolved on the Assembly the function of determining what method shall be adopted.

A law which divides insurance companies into several classes according to the amount of premiums received, and imposes on each class a different license-tax, greater upon those receiving a larger amount of premiums than on those receiving less, complies with the requirement of graduation.

The charge that smaller companies pay a larger tax in proportion to their premiums than the larger companies, may impugn the justice, but not the constitutionality of the law, the constitution not declaring that the graduation shall be in exact proportion to the business done.

A foreign corporation is not *required* by the Constitution to be licensed by a different mode from that provided for home corporations. The Constitution is not imperative, but simply permissive of such mode. Such corporation cannot complain that the license claimed is based on the system adopted for home organizations.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*John McEnery* and *Walter B. Sommerville* for State, Appellee.

Sec. 7 of Act. No. 106 of 1886 is graduated in accordance with Art. 206 of the Constitution, and the license taxes imposed on all companies and persons falling within any given class are equal and uniform. State vs. Chapman & Generally, 35 Ann. 76; State vs. O'Hara, 36 Ann. 94; State vs. Schonhausen, 35 Ann. 42.

*E. W. Huntington* and *Horace L. Dufour* for Defendant and Appellant.

The license taxation on insurance companies fixed in Sec. 7, Act. No. 101, 1886, is violative of Articles 203 and 206, Constitution of Louisiana 1879.

In interpreting a law or an article of a constitution, regard must be had to its object, and

the mischief it was intended to remedy.  5 Ann, 516 ; C. C. 18 ; 6 Ann. 386 ; 9 Ann. 165; 12 Ann. 777, 154 ; 11 Ann. 124 ; 12 Ann. 699.

Reference to the history of a law or article of a constitution can be had to ascertain its meaning.  11 Ann. 439 ; 16 L. 268 ; 5 N. S. 140 ; 5 Ann. 516.

Prior to the Constitution of 1879 the Legislature constantly sought to proportion and graduate license taxation according to the quantity of business done, and by other equitable standards and proportionate apportionment, but were prevented by the courts declaring such graduations inadmissible under the then existing constitutions.  23 Ann. 449, 464 ; 24 Ann. 112; 26 Ann. 141; 28 Ann. 102.  To obviate this difficulty Art. 206 of the present Constitution provided for a "graduation."

Where a new system of law is introduced in the State, the terms used in it are to be interpreted by the jurisprudence from which it is taken.  16 L. 394 ; 30 Grattan, 477.

The system of a graduated license tax is new in this State and is taken from other states, where it has long prevailed, and to which we must look for the meaning of the word " graduation "—which means a proportionate scaling of the license tax on a basis " which is reasonably fair and just."  1 Pacific Rep. 204 (Kansas) ; there must be a "rational " basis " and the apportionment of taxes accordingly."  Cooley on Tax. Note to p. 139 ; 10 Pacific Rep. (Cal.) 113 ; 31 Iowa, 106.  In " graduation " there must be "an intended approximation to equality, and if the assignment is fair and judicious, or nearly attains it, as is perhaps practicable in a license law."  23 Grattan, 473 ;  36 Ann. 93.

The opinion of the Court was delivered by

FENNER, J.  The defendant resists the claim of the State to the license-tax due under the Act No. 101 of 1886, on the ground that said act is unconstitutional, because the license taxes thereby imposed are not equal and uniform and because they are not graduated in the manner directed and required by the Constitution of 1879.

Art. 203 of the Constitution provides that '· taxation shall be equal and uniform," etc.  Art. 206 provides :  " The General Assembly may levy a license tax and, in such case, shall graduate the amount of such tax to be collected from the persons pursuing the several trades, professions and callings."

1.  It is very certain that the license taxes imposed by the Act of 1886 are not " equal and uniform ;" if they were, they would clearly be unconstitutional.

The meaning of the requirement of equality and uniformity as applied to license taxation was settled by numerous decisions under the Constitution of 1868, from one of which we quote :  " The Constitution (of 1868) requires that a license tax as well as a tax on property shall be equal and uniform.  To be equal and uniform the tax imposed must be the same on all who engage in the particular profession or calling taxed, without reference to the abilities, fortunes or successes of these engaging therein."  City of N. O. vs. Home Ins. Co., 23 Ann. 449 ; State vs. Endom, 23 Ann. 663 ; Parish vs. Gurth, 26 Ann. 140 ; Cullman vs. City, 28 Ann. 102.

The utterance above quoted was made in a case involving a license-tax upon insurance companies very similar to that contained in the act of 1886, the companies being divided into classes according to the amount of premiums received and a different rate of tax being required from each class.

This and the other kindred decisions above cited furnished the controlling motive which prompted the adoption of Art. 206 of the present constitution, by which license taxation is exempted from the requirement of equality and uniformity, and is not only authorized but required to be graduated.

2. The next defense is that the license taxes imposed by the act of 1886 are not "graduated in the manner directed and required by the Constitution of 1879."

The natural inquiry arises, what manner of graduation is required and directed by the Constitution? There is no provision or direction whatever. The simple requirement is that "the General Assembly shall graduate the amount of such tax to be collected," etc.

The word "graduate," philologically considered, is one of elastic import having various meanings. Of the definitions given in the dictionaries, the one most applicable is the following: "To regulate by degrees; to proportion; to adjust; as to graduate punishments." Worcester's Dic.

The standards and methods of regulation, proportion and adjustment are susceptible of infinite variation. If the framers of the Constitution had seen fit to require some particular method or standard, they might have indicated and defined it; but they have not done so. Who then is to determine what method of graduation shall be adopted? The Constitution has expressly and distinctly confided this function to the General Assembly.

The General Assembly has exercised it in the law before us. It has divided the companies and persons pursuing the business of insurance into several classes, according to the amount of premiums collected. It has levied upon each class a different license tax, greater upon those receiving a larger amount of premiums than upon those receiving a less.

This is certainly a graduation of the tax—a proportioning, regulation and adjustment of the tax between the different classes according to the amount of business done. The complaint is that the smaller companies, though paying a substantially less tax than the larger ones, pay a larger amount in proportion to the business done. This may be

'30

an objection to the propriety and justice of the law, but unless de-. fendant can point out some provision of the Constitution requiring that the tax shall be graduated in exact proportion to the amount of business done, it is of no avail as an attack upon the constitutionality of the law. The Constitution has laid down no such rule, and it is not in our power to do so.

Such a rule would prevent all classification whatever, and would convert the license taxation into a simple income tax which was certainly never intended.

The method of graduation here presented was the one attempted by the General Assembly under the Constitution of 1868, the judicial condemnation of which was the evil intended to be remedied by Art. 206 of the present Constitution. It has been one of the methods pursued in all the license laws adopted under the latter Constitution, and everything indicates that it was one contemplated by that instrument.

We have had occasion heretofore to consider the nature of the power conferred on the Generally Assembly by Article 206 and have reached conclusions analogous to those now announced. State vs. Chapman, 35 Ann. 76; State vs. O'Hara, 36 Ann. 94; State vs. Schonhausen, 37 Ann. 42; State vs. Marrero, 38 Ann. 397.

The case is one eminently requiring the application of the principle recently announced by us: "That the judiciary, recognizing the right and duty of the Legislature to construe and determine primarily its own power under the Constitution, will never overrule that determination unless clearly convinced of such radical inconsistency between the law and the Constitution, that the two cannot be reconciled." Planting Company vs. Tax-collector, 39 Ann. 465.

Judgment affirmed.

---

ON APPLICATION FOR REHEARING.

BERMUDEZ, C. J. Counsel for the company now rely for the first time on Art. 217 of the Constitution to show that the Constitution requires equality and uniformity in license taxation. Although made late, it will be considered.

The article is not imperative, but only permissive. It does not. *require* that corporations, companies or associations organized or domiciled out of this State and doing business therein, be licensed by a mode different from that provided for home corporations or companies.

It simply provides that such organizations *may* be licensed, and

when they are licensed, the different modes of license shall be uniform upon a graduated sytem, as to all such corporations, companies or associations that transact the same kind of business.

There is nothing to show that the license demanded, is claimed under a mode different from that established for home corporations or companies; on the contrary, it appears that the license is the same that would have been demanded from the defendant company, if it were a home corporation. This would suffice to shut out the defendant from all complaint, for it cannot pretend that, because it was not treated as a foreign organization, it is entitled to privileges, or favors, or protection which cannot be extended to home institutions.

Moreover, whatever has been said in the opinion touching the mode of license, when different, the uniformity and a graduated system, stands in refutation of the new proposition advanced.

Rehearing refused.